OPINION
The State Of Ohio appeals the Montgomery Court of Common Pleas' legal conclusion that the amount of the dollar value of theft by deception of welfare benefits constitutes only the overpayment and not the entire amount of benefits received by a defendant after giving false information when applying for those benefits.
Michelle Edmondson, the Defendant-Appellee in this case, received Aid to Dependent Children (hereinafter "ADC") benefits and food stamps from October 9, 1990 until September 28, 1994. During that time period, Ms. Edmondson failed to report her employment to the Montgomery County Department of Human Services. Ms. Edmondson was indicted on January 8, 1999 by a Montgomery County Grand Jury for two counts of theft by deception, in violation of R.C. § 2913.02 (A) (3). The statute provides, in pertinent part:
 No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: . . . by deception [.]
The first count involved receiving ADC benefits having a value of Five Thousand Dollars ($5,000.00) or more and the second count involved food stamp benefits having a value of Five Thousand Dollars ($5,000.00) or more. Both counts involved felonies of the fourth degree.
On August 30, 1999, the case was tried before the trial court. At trial, both parties stipulated to the identification of Edmondson, venue, the dates of the alleged theft (October 9, 1990 through September 28, 1994), that Edmondson did not inform the Montgomery County Department of Human Services of her employment during the alleged theft period, and that the State of Ohio is the owner of the ADC benefits and the United States Government is the owner of the food stamp benefits. The only contested issue was the amount of the alleged theft. The State contended the amount of the theft should be the total amount of benefits Ms. Edmondson received after her initial misrepresentation, $12,829 in ADC benefits and $8,836 in food stamps. The Defendant argued that the dollar value of the theft should be limited to the welfare benefits Ms. Edmondson received over and above the amount of benefits (the "overpayment" amount as calculated by the Department of Human Services) she would have been entitled to had she truthfully reported her employment to the Department of Human Services. The Department calculated her overpayment amount at $2,415.00 in ADC benefits and $2,211.00 in food stamp benefits.
In its October 15, 1999 Decision, Order, and Entry, the trial court determined that the theft amount would be limited to the overpayment amount. The court departed from our precedent and followed the reasoning of State v. White (Sept. 24, 1998), Montgomery C.P. No. 98-CR-0525, unreported, and State v. Merrill
(May 13, 1996), Montgomery C.P. No. 94- CR-2699, unreported. In those cases, the courts decided that falsification of the benefit applications alone was not enough to constitute a violation of R.C. § 2913.02 (A) (3). See White, supra, at 3; Merrill, supra, at 4. Instead, it had to be shown that the defendant would not have obtained the benefits in question but for the deception. SeeWhite, supra, at 3; Merrill, supra, at 5; See, also State v.Luna, (1994), 94 Ohio App.3d 653, 662 (finding that "the relevant inquiry" in a theft by deception case is the benefits the defendant received "as a result of the deception that he would not have received had he been truthful"). The trial court in this case decided that since Ms. Edmondson would have received a substantial amount of ADC and food stamps benefits if she had truthfully reported her employment status, only the value of the benefits she received but for her deception should be considered in calculating the theft amount. Thus, Ms. Edmondson was convicted of one count of theft by deception of ADC benefits in the amount of $2,415.00 and one count of theft by deception of food stamp benefits in the amount of $2,211.00, both fifth degree felonies and lesser-included offenses of the charges in counts one and two.
The State sought leave to appeal the trial court's legal conclusion pursuant to R.C. § 2945.67 (A). This court granted leave to appeal on December 17, 1999.
In support of its proposition that the theft amount should include the total welfare benefits received after making a false statement in applying for the benefits, the State cites State v.Chambers (Sept. 28, 1982), Montgomery App. No. 7360, unreported. In Chambers, the defendant did not report outside income on her application for welfare benefits and was convicted of theft by deception in the amount of $150.00 or more. Id. at 1-2 The defendant argued the State failed to prove she had illegally received welfare benefits of $150.00 or more because the State did not offer evidence of the amount she would have been entitled had she reported the outside income. Id. at 2-3. We ultimately determined that it was not necessary for the State to produce evidence of the amount she would have been entitled to had she reported her outside income to prove the theft amount. Id. at 3. According to the Court, "the deception" is what "triggers the offense" and all welfare benefits the defendant received after the "initial misrepresentation" are to be included in the theft amount. Id; See also State v. Crowder (Feb. 10, 1995), Montgomery App. No. 14478, unreported, at *2 (finding that the fact the defendant could have filed a truthful application and received the same amount of benefits does not "negate the deception" because the benefits were still received "by means of a deception"); State v. Martin (March 3, 1986), Montgomery App. No. 9506, unreported; State v. Tucker (Dec. 24, 1981), Montgomery App. No. 7288, unreported.
According to the Department of Human Services regulations, an applicant for public assistance who makes "a false or misleading statement or misrepresentation" about a material fact related to his eligibility for benefits is deemed to have committed an "intentional program violation" and is then ineligible for any benefits. Ohio Adm. Code 5101:6-20-02; Ohio Adm. Code 5101:6-20-03. In the present case, Ms. Edmondson was deemed ineligible by the Department of Human Services for all ADC and food stamp benefits she received during the time she lied about her employment status. Although the Appellant would have been entitled to some ADC and food stamp benefits had she truthfully reported her employment, she was not entitled to any benefits she received because of her misrepresentation. All of the benefits she received, then, were "the product of theft" by deception. Chambers, supra, at *3. Therefore, all of the benefits Ms. Edmondson received because of her deception should be included in calculating the theft amount., Appellee argues that Chambers' reasoning is no longer applicable in today's society because the decision was based in part on the "unwarranted" hardship it would present for the State to calculate the overpayment amount. Chambers, supra at *3. Technology has improved in the nearly eighteen years since Chambers was decided and the State of Ohio now has an entire department devoted to calculating the overpayment amount. Clearly, calculating the overpayment amount no longer presents an undue burden on the State. However, the overpayment amount is calculated solely for purposes of determining the restitution amount the defendant must repay the Department. The restitution amount is irrelevant to the calculation of the theft amount.
The perceived difficulty in calculating the overpayment amount was only a minor factor in the Chambers court's decision. The principal holding in Chambers that the theft amount is the total benefits the defendant "acquired after the initial misrepresentation" about her eligibility for public assistance is still applicable today. Chambers, supra at * 3.
In upholding the reasoning of Chambers and Crowder, we recognize our decision is in direct conflict with the decision of the Sixth Appellate District in State v. Luna. We would entertain appellee's motion to certify our opinion as in conflict with theLuna opinion.
The judgment of the trial court is Reversed and Remanded for further proceedings consistent with this opinion.
GRADY, P.J., and YOUNG, J., concur.